IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES A. GENCO, III,                    )        Civil Action No.
                                         )        2:21-cv-1518
                 Plaintiff,              )
                                         )
       v.                                )
                                         )
CHRISTINE LUFFEY,                        )
HUMANE ANIMAL RESCUE                     )
OF PITTSBURGH,                           )
MEAGAN MONTMENY, CAMILLE                 )
BURKE, JOHN/JANE DOE(S),                 )
PITTSBURGH VETERINARY                    )
SPECIALTY AND EMERGENCY                  )
CLINIC and EMILY GARDNER,                )        JURY TRIAL DEMANDED
                                         )
                 Defendants.             )        Electronically Filed.

## COMPLAINT IN A CIVIL ACTION

COMES NOW, the Plaintiff, JAMES A. GENCO, III, by and through his attorneys,

LAW OFFICES OF JOEL SANSONE, JOEL S. SANSONE, ESQUIRE, MASSIMO A.

TERZIGNI, ESQUIRE, and ELIZABETH A. TUTTLE, ESQUIRE, and hereby files this

Complaint in a Civil Action as follows:

## JURISDICTION AND VENUE

1.      This is an action for the redress of grievances and in vindication of civil rights guaranteed

to the Plaintiff under the Constitution of the United States and the laws enacted in furtherance

thereof, including 42 U.S.C. § 1983.

2.      This action is brought against the Defendants for violating Plaintiff's rights under the

Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

3.      Jurisdiction is founded on 28 U.S.C. § 1331 and § 1343(3).  Supplemental jurisdiction

over Plaintiff's state law claims is also proper pursuant to 28 U.S.C.A. § 1367.

4.      Venue is proper under 28 U.S.C.A. § 1391(b).  All claims set forth herein arose in the Western District of Pennsylvania.

PARTIES

5.      Plaintiff, James A. Genco III, is an adult individual residing in Allegheny County, Pennsylvania.

6.      Defendant, Christine Luffey ("Luffey"), is a United States Citizen.  Plaintiff believes, and therefore avers, that Defendant Luffey is a resident of Allegheny County, Pennsylvania. At all times relevant to this Complaint, Defendant Luffey was a law enforcement officer employed by the City of Pittsburgh Police Department, stationed at 830 East Warrington Avenue, Pittsburgh, Pennsylvania 15210, purporting to act within the full scope of her authority and office, and under color of law and pursuant to the statutes, ordinances, regulations, and customs and usages of the City of Pittsburgh Police.

7.      Defendant, Human Animal Rescue of Pittsburgh ("HARP"), is a Pennsylvanian non-profit organization, society or association with shelters located at 6926 Hamilton Avenue, Pittsburgh, Pennsylvania 15208 and 1101 Western Avenue, Pittsburgh, Pennsylvania 15233.  At all times relevant hereto, the Defendant HARP was acting through its agents, subsidiaries, officers, employees and assigns acting within the full scope of their agency, office, employment or assignment, including, but not limited to, Defendant Meagan Montmeny, Defendant Camille Burke and Defendants John/Jane Doe(s).

8.      Defendant, Meagan Montmeny ("Montmeny"), is a female United States citizen. Plaintiff believes, and therefore avers, that Defendant Montmeny is a resident of Allegheny County, Pennsylvania. At all times relevant to this Complaint, Defendant Montmeny was employed by Defendant HARP as Chief Operations Officer.

9.      Defendant, Camille Burke ("Burke"), is a female United States citizen. Plaintiff believes, and therefore avers, that Defendant Burke is a resident of Allegheny County, Pennsylvania.  At all times relevant to this Complaint, Defendant Burke was employed by Defendant HARP as a veterinary technician.

10.     Defendant, John/Jane Doe(s) ("Doe(s)"), unknown in name and number, at all times relevant to this Complaint, were employees and/or volunteers of Defendant HARP and/or other individuals associated with Defendant HARP.

11.     Defendant, Pittsburgh Veterinary Specialty and Emergency Center ("PVSEC"), is now, and was at all times relevant to Plaintiff's claims, a business corporation with a local address of 807 Camp Horne Road, Pittsburgh, Pennsylvania 15237.  At all times relevant hereto, the Defendant PVSEC was acting through its agents, subsidiaries, officers, employees and assigns acting within the full scope of their agency, office, employment or assignment, including, but not limited to, Defendant Gardner.

12.     Defendant, Emily Gardner ("Gardner"), is a female United States citizen. Plaintiff believes, and therefore avers, that Defendant Gardner is a resident of Allegheny County, Pennsylvania.  At all times relevant to this Complaint, Defendant Gardner was employed by Defendant PVSEC as a veterinary technician.

<u>FACTUAL ALLEGATIONS</u>

13.     Plaintiff has been employed by the City of Pittsburgh as an animal care and control officer since in or about 1996.

14.     Plaintiff has no past record of any misconduct or abuse in his employment as animal care and control officer for the City of Pittsburgh.

3

15.     On or about March 17, 2021, Plaintiff and his partner, Animal Care and Control Officer

John Lapp ("Officer Lapp"), were notified of two (2) dogs in distress that were left unattended,

without food or water, inside of a vehicle that was parked in the sun, with the windows up, in the

Strip District of Pittsburgh.

16.     Plaintiff and Officer Lapp arrived at the scene and attempted to locate the owner(s) of the

vehicle and dogs.  Plaintiff and Officer Lapp were unsuccessful in locating this individual(s).

17.     Witnesses informed the Plaintiff and Officer Lapp that the dogs had been unattended

inside of the vehicle for the entire morning.

18.     Thereafter, Officers Francis Rende ("Officer Rende") and Eric Churilla ("Officer

Churilla") of the Pittsburgh Police Department arrived at the scene.

19.     Officer Churilla then provided a tool for Officer Lapp to break a window of the vehicle.

Plaintiff and Officer Lapp then removed the dogs from the vehicle.

20.     The smaller dog was calm and was removed from the vehicle without any issue.  The

larger dog was extremely aggressive upon its removal from the vehicle.

21.     Due to the extreme aggression of the larger dog, this dog suffered multiple cuts and

wounds from the broken glass of the window of the vehicle.  Plaintiff placed the large dog on a

control pole due to its aggression.

22.     At or around this time, Officer Rende drew his firearm, as a direct result of the larger

dog's extreme aggression.  Officer Rende later stated that he was concerned for his safety and

the safety of the other officers, including the Plaintiff, at that time.

23.     The larger dog continued to display extreme aggression toward the Plaintiff and other

individuals on the scene.  This aggression included, but was not limited to, growling, biting the

control pole, pulling, and lunging its body onto the ground and towards the Plaintiff and other individuals at the scene.

24.    Due to the larger dog's extreme aggression, Plaintiff was concerned for his safety and the safety of others while handling the larger dog.

25.    Plaintiff and Officer Lapp then placed the two (2) dogs into their animal control vehicle with difficulty due to the extreme aggression of the larger dog.

26.    When the larger dog was placed into a cage in the animal control vehicle, it began to bite the metal of the cage.  This behavior caused multiple sections of the cage to become bent and/or damaged.

27.    The larger dog broke multiple teeth as a result of biting the control pole and the cage, as described hereinbefore above.

28.    Plaintiff and Officer Lapp transported the two (2) dogs to Defendant HARP's garage area, located at 6926 Hamilton Avenue, Pittsburgh, Pennsylvania 15208, for intake.

29.    The smaller dog was given to individuals working at Defendant HARP without any issues or aggressive behavior.

30.    When Plaintiff removed the larger dog from the animal control vehicle, the larger dog lunged at the Plaintiff, causing the Plaintiff fall backwards.

31.    Plaintiff again restrained the larger dog with a control pole and walked the dog into the facility.  The larger dog continued to bite the control pole and display extreme aggression.

32.    The aggressive and erratic behavior of the larger dog required the Plaintiff and approximately three (3) veterinary technicians to restrain the aggressive dog once the Plaintiff brought the dog to Defendant HARP's the exam room.

33.     At that time, one of Defendant HARP's veterinary technicians threw the larger dog behind the exam room door and the dog was muzzled and sedated.

34.     Thereafter, Plaintiff had no further contact with the larger dog and he left Defendant HARP's facility.

35.     Sometime thereafter, Defendants Montmeny, Burke and/or Doe(s), in their capacity as employees of Defendant HARP, contacted the Plaintiff's employer and made false and defamatory statements that the Plaintiff abused the larger dog while at Defendant HARP's facility on or about March 17, 2021.

36.     The false and defamatory accusation of animal cruelty made by Defendants Montmeny, Burke and/or Doe(s), in their capacity as employees for Defendant HARP, was, and is, patently false.  Plaintiff in no way abused any animal during the events described hereinbefore above.

37.     Defendants Montmeny, Burke and Doe(s) knew, or should have known, that these statements about the Plaintiff were false.  Plaintiff believes, and therefore avers, that these Defendants made such statements in order to harm the Plaintiff.

38.     On or about April 1, 2021, as a direct and proximate result of the false and defamatory statements of abuse made by Defendants Montmeny, Burke and/or Doe(s), Plaintiff was placed on leave by the City of Pittsburgh.

39.     Defendant Montmeny, Defendant Burke and/or Defendant Doe(s), in their capacity as employees of Defendant HARP, also contacted the Pittsburgh Police Department and made false and defamatory statements to Defendant Luffey that the Plaintiff abused the larger dog while at Defendant's HARP's facility on or about March 17, 2021.  This was, and is, patently false.

40.     Plaintiff believes, and therefore avers, that Defendant Luffey knew, or should have known, that these statements by Defendant Montmeny, Burke and/or Defendant Doe(s) were false.

41.     Defendants Montmeny, Burke and/or Doe(s) provided security camera footage of Defendant HARP that showed the Plaintiff's interactions with the dog at Defendant HARP's facility to Defendant Luffey.

42.     This security footage showed no evidence whatsoever that Plaintiff was abusive toward the dog at any time.

43.     During the course of Defendant Luffey's investigation, Defendant Gardner, in her capacity as veterinarian for Defendant PVSEC, falsely accused the Plaintiff of "definitely" using excessive force on the larger dog while at Defendant HARP's facility to Defendant Luffey.

44.     Defendant Luffey and/or other individuals involved in Defendant Luffey's investigation questioned the Plaintiff about his interactions with the larger dog at Defendant HARP's facility. Plaintiff gave a statement to Defendant Luffey that he in no way abused the dog at any time and that the dog's injuries were self-inflicted and a result of the dog's extreme aggression and erratic behavior.

45.     Defendant Luffey and/or other individuals involved in Defendant Luffey's investigation questioned Officer Lapp about the Plaintiff's interactions with the larger dog at Defendant HARP's facility.  Officer Lapp gave a statement to Defendant Luffey confirming that the Plaintiff in no way abused the dog at any time and that the dog's injuries were self-inflicted and a result of the dog's extreme aggression and erratic behavior.

46.     Defendant Luffey and/or other individuals involved in Defendant Luffey's investigation also questioned Officers Rende and Churilla about the Plaintiff's interactions with the larger dog.

Officers Rende and Churilla gave statements to Defendant Luffey confirming that the Plaintiff in no way abused the dog at any time and that the dog's injuries were self-inflicted and a result of the dog's extreme aggression and erratic behavior.

47.     At that time, Officer Rende also informed Defendant Luffey that, when he encountered the dog, he feared for his safety and the safety of the other individuals present.  Officer Rende also stated that he drew his firearm as a direct result of the dog's aggression.

48.     On or about June 10, 2021, Defendant Luffey charged and arrested the Plaintiff with a felony of aggravated cruelty to animals, a misdemeanor of cruelty to animals and a summary offense of cruelty to animals.

49.     There was no probable cause to charge the Plaintiff for the aforementioned crimes and Defendant Luffey knew, or should have known, through the exercise of reasonable caution, that no reasonable basis existed for the aforementioned criminal charges to be brought against Plaintiff.

50.     Defendant Luffey's affidavit of probable cause lacked probable cause to charge the Plaintiff with the aforementioned criminal charges.

51.     Furthermore, Defendant Luffey's failed to include exculpatory evidence in her affidavit of probable cause, including, but not limited to, statements from Officers Lapp, Officer Rende, Officer Churilla and the Plaintiff, as described hereinbefore above.

52.     At the time of the Plaintiff's arrest, Defendant Luffey had video surveillance footage to show that there was no probable cause to charge the Plaintiff with the aforementioned crimes.e

53.     Defendant Luffey also included false information in her affidavit of probable cause, including, but not limited to, falsely stating that the Plaintiff dragged the dog twenty-five (25) to thirty (30) feet and attributing an already existing tail injury to the Plaintiff's alleged behavior.

54.     Moreover, Defendant Luffey specializes in animal abuse and neglect cases and, therefore, knew, or should have known, that there was no probable cause to charge the Plaintiff with the aforementioned criminal charges.

55.     Plaintiff was detained for approximately twenty-two (22) hours in the Allegheny County Jail, without any justification.

56.     On or about June 11, 2021, Plaintiff was suspended from his position as animal care and control officer by the City of Pittsburgh

57.     On or about June 18, 2021, Plaintiff was terminated from his position as animal care and control officer by the City of Pittsburgh.

58.     On or about September 21, 2021, at the Plaintiff's preliminary hearing, all charges against the Plaintiff were dismissed.

59.     Defendant Luffey has a close working and/or personal relationship with Defendant HARP and individuals associated with Defendant HARP and Defendant PVSEC.

60.     Plaintiff believes, and therefore avers, Defendant Luffey, Defendants Montmeny, Burke and/or Doe(s), in their capacity as employees and/or representatives of Defendant HARP, and Defendant Gardner, in her capacity as veterinarian for Defendant PVSEC, conspired against the Plaintiff to unlawfully arrest, detain and prosecute the Plaintiff, without any probable cause.

61.     Plaintiff has reported concerns about Defendant HARP's facility in the past regarding issues with Defendant HARP's garage and other matters to his supervisor.  Plaintiff has also taken pictures of Defendant HARP's garage in order to present his concerns, at the request of his supervisor.

62.     Plaintiff believes, and therefore avers, Defendant Luffey and Defendant Montmeny, Burke and/or Doe(s), in their capacity as employees and/or representatives of Defendant HARP,

9

conspired against the Plaintiff to unlawfully arrest, detain and prosecute the Plaintiff, without any probable cause, in order to retaliate against the Plaintiff for his reports against Defendant HARP.

63.     Plaintiff also believes, and therefore avers, that Defendant Luffey, Defendants Montmeny, Burke, and/or Doe(s), in their capacity as employees and/or representatives of Defendant HARP, and Defendant Gardner, in her capacity as veterinarian for Defendant PVSEC, conspired to defame the Plaintiff and/or to interfere with his business relationship with the City of Pittsburgh as animal care and control officer.

64.     As a direct and proximate result of the defamatory statements made by Defendants Montmeny, Burke, Doe(s) and Gardner, in conspiracy with Defendant Luffey, Plaintiff was criminally charged for crimes which he did not commit, as more fully described hereinbefore above.

65.     Plaintiff was placed on leave and eventually terminated from his position as animal care and control officer for the City of Pittsburgh.

66.     As a direct and proximate result of the actions of the Defendants, and each of them, Plaintiff was required to withdraw his pension.

67.     As a direct result of the actions of the Defendants, Plaintiff suffered, and continues to suffer, from extreme emotional distress and sleepless nights.

COUNT I:

PLAINTIFF v. ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AMENDMENT
TO THE UNITED STATES CONSTITUTION

<u>MALICIOIUS PROSECUTION</u>

68.     Plaintiff incorporates by reference Paragraphs 1 through 67 as though fully set forth at

length herein.

69.     Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. §1983 against

Defendants for violations of Plaintiff's constitutional rights under color of law.

70.     At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to

the United States Constitution, Plaintiff had the right to be free from prosecution without

probable cause.

71.     As more fully described hereinbefore above, Defendant Luffey intentionally charged

Plaintiff without probable cause and initiated the unjustified prosecution of the Plaintiff.

72.     Defendant Luffey knew, or should have known, through the exercise of reasonable

caution, that no reasonable basis existed for the aforementioned criminal charges to be brought

against Plaintiff.

73.     Defendant Luffey knew, or should have known, through security footage evidence, that

no probable cause existed for prosecution of the Plaintiff.

74.     Charging the Plaintiff without probable cause constitutes malice on the part of Defendant

Luffey.

75.     The arrest, seizure and subsequent prosecution of the Plaintiff constituted a malicious prosecution by Defendant Luffey in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.

76.     Plaintiff believes, and therefore avers, Defendant Luffey and Defendant Montmeny, Defendant Burke and/or Doe(s), in their capacity as employees and/or representatives of Defendant HARP, and Defendant Gardner, in her capacity as veterinarian for Defendant PVSEC, conspired against the Plaintiff to unlawfully arrest, detain and prosecute the Plaintiff, without any probable cause.

77.     Plaintiff believes, and therefore avers, Defendant Luffey and Defendant Montmeny, Defendant Burke and/or Doe(s), in their capacity as employees and/or representatives of Defendant HARP, conspired against the Plaintiff to unlawfully arrest, detain and prosecute the Plaintiff, without any probable cause, in order to retaliate against the Plaintiff for his reports against Defendant HARP.

78.     The actions of Defendants Montmeny, Burke and/or Doe(s), as more fully described herein, were done within the scope of their employment with and/or their capacity as representatives of Defendant HARP.

79.     The actions of Defendant Gardner, as more fully described herein, were done within the scope of their employment with and/or their capacity as representatives of Defendant PVSEC.

80.     The actions of the Defendants constituted malicious prosecution in that:

        a.      Defendant Luffey initiated criminal proceedings against Plaintiff;

        b.      the criminal proceedings ended in the Plaintiff's favor;

        c.      the arrest, seizure and prosecution of the Plaintiff were initiated without
                probable cause;

d.     Defendants acted maliciously and/or for purposes other than bringing the Plaintiff to justice; and

e.     Plaintiff suffered an unlawful seizure of his person in violation of Plaintiff's rights under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution.

81.     The actions of Defendants, and each of them, were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting these Defendants to punitive damages.

82.     As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, Plaintiff suffered the following injuries and damages:

a.     Plaintiff's rights under the Fourth Amendment to the United States constitution were violated;

b.     fright, horror, and shock;

c.     emotional trauma and suffering;

d.     damage to Plaintiff's reputation;

e.     economic damages in the form of lost wages and pension; and

f.     economic damages related to any other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of them, and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

13

COUNT II:

PLAINTIFF v. ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS,
SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AMENDMENT
TO THE UNITED STATES CONSTITUTION

<u>FALSE ARREST</u>

83.     Plaintiff incorporates by reference Paragraphs 1 through 82 as though fully set forth at

length herein.

84.     Plaintiff claims damages for the injuries set forth herein under 42 U.S.C. §1983 against

Defendants for violations of Plaintiff's constitutional rights under color of law.

85.     At all times relevant hereto, pursuant to 42 U.S.C. §1983 and the Fourth Amendment to

the United States Constitution, Plaintiff had the right to be free from unreasonable seizure of his

person and arrest without probable cause.

86.     The unreasonable seizure of Plaintiff's person by Defendant Luffey and his subsequent

false arrest constituted an unreasonable deprivation of the Plaintiff's liberty in violation of the

Fourth Amendment to the United States Constitution, and at all times was done without probable

cause to believe the Plaintiff had committed an act which would justify his arrest.

87.     Plaintiff believes, and therefore avers, Defendant Luffey and Defendant Montmeny,

Defendant Burke and/or Doe(s), in their capacity as employees and/or representatives of

Defendant HARP, and Defendant Gardner, in her capacity as a veterinarian for Defendant

PVSEC, conspired against the Plaintiff to unlawfully arrest, detain and prosecute the Plaintiff,

without any probable cause.

88.     The actions of Defendants Montmeny, Burke and/or Doe(s), as more fully described herein, were done within the scope of their employment with and/or their capacity as representatives of Defendant HARP.

89.     The actions of Defendants were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting Defendants to punitive damages.

90.     Defendant Luffey arrested the Plaintiff without the requisite probable cause to do so.

91.     The conduct of Defendants deprived the Plaintiff of his right to be free from unreasonable and unlawful detention and arrest.

92.     Pursuant to 42 US.C. § 1983 and the Fourth Amendment to the United States Constitution, Defendants had a duty and/or was required to avoid the use of unlawful detention and arrest against the Plaintiff without probable cause.

93.     As a direct and proximate result of the acts described hereinbefore above perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

   a.      Plaintiff's rights under the Fourth Amendment to the United States
           constitution were violated;

   b.      fright, horror, and shock;

   c.       emotional trauma and suffering;

   d.      damage to Plaintiff's reputation;

   e.      economic damages in the form of lost wages and pension; and

   f.      economic damages related to any other consequential costs.

   WHEREFORE, Plaintiff demands compensatory general damages against Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of

15

them, and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT III:

PLAINTIFF v. ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, SPECIFICALLY, 42 U.S.C. §1983 AND THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

FALSE IMPRISONMENT

94.     Plaintiff incorporates by reference Paragraphs 1 through 93 as though fully set forth at length herein.

95.     The subsequent detainment of Plaintiff pursuant to his false arrest, as more fully described hereinbefore above, constituted false imprisonment of the Plaintiff and violated the Plaintiff's right as guaranteed to him by the Fourth Amendment to the United States Constitution.

96.     Plaintiff believes, and therefore avers, Defendant Luffey and Defendant Montmeny, Defendant Burke and/or Doe(s), in their capacity as employees and/or representatives of Defendant HARP, and Defendant Gardner, in her capacity as veterinarian for Defendant PVSEC, conspired against the Plaintiff to unlawfully arrest, detain and prosecute the Plaintiff, without any probable cause.

97.     The actions of Defendants Montmeny, Burke and/or Doe(s), as more fully described herein, were done within the scope of their employment with and/or their capacity as representatives of Defendant HARP.

98.     The actions of Gardner, as more fully described herein, were done within the scope of her employment with and/or her capacity as a representative of Defendant PVSEC.

99.     The actions of Defendants were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting Defendants to punitive damages.

100.    As a direct and proximate result of the acts described hereinbefore above perpetrated by Defendants, Plaintiff suffered the following injuries and damages:

      a.      Plaintiff's rights under the Fourth Amendment to the United States constitution were violated;

      b.      fright, horror, and shock;

      c.       emotional trauma and suffering;

      d.      damage to Plaintiff's reputation;

      e.      economic damages in the form of lost wages and pension; and

      f.      economic damages related to any other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of them, and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IV:

PLAINTIFF v ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL
RIGHTS, SPECIFICALLY, 42 U.S.C.A § 1983 AND THE
FOURTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>CONSPIRACY</u>

101.    Plaintiff incorporates by reference Paragraphs 1 through 100 as though fully set forth at

length herein.

102.    The aforementioned actions of Defendants Luffey, Montmeny, Burke and Doe(s)

constituted a conspiracy to arrest, detain and/or prosecute the Plaintiff, without probable cause,

thereby violating 42 U.S.C. §1983.

103.    The actions of Defendants Montmeny, Burke and/or Doe(s), as more fully described

herein, were done within the scope of their employment with and/or their capacity as

representatives of Defendant HARP.

104.    The actions of Defendant Gardner as more fully described hereinbefore above, were done

within the scope of and/or her capacity as a representative and employee of Defendant PVSEC.

105.    The actions of the individual Defendants, and each of them, were willful, wanton and/or

done with a reckless disregard for the rights of Plaintiff, thereby subjecting these Defendants to

punitive damages.

82.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by

the Defendants, Plaintiff suffered the following injuries and damages:

      a.    Plaintiff's rights under the Fourth Amendment to the United States
            constitution were violated;

      b.    fright, horror, and shock;

c.       emotional trauma and suffering;

d.       damage to Plaintiff's reputation;

e.       economic damages in the form of lost wages and pension; and

f.       economic damages related to any other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of them, and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT V:

PLAINTIFF v. DEFENDANT HARP

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL
RIGHTS, SPECIFICALLY, 42 U.S.C.A § 1983 AND THE
FOURTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

<u>RESPONDEAT SUPERIOR</u>

106.    Plaintiff incorporates by reference Paragraphs 1 through 105 as though fully set forth at length herein.

107.    Defendant HARP has a duty to oversee the activities of its employees and representatives and is responsible for the actions of employees and representatives during the scope of their employment.

108.    The unlawful and tortious actions of Defendants Montmeny, Burke and Doe(s), as more fully described hereinbefore above, were completed during the scope of their employment and/or representation of Defendant HARP.

109.    As a direct and proximate result of the acts described hereinbefore above perpetrated by individual Defendants, as representatives of Defendant HARP, Plaintiff suffered the following injuries and damages:

       a.      Plaintiff's rights under the Fourth Amendment to the United States constitution were violated;

       b.      fright, horror, and shock;

       c.       emotional trauma and suffering;

       d.      damage to Plaintiff's reputation;

       e.      economic damages in the form of lost wages and pension; and

       f.      economic damages related to any other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against Defendant HARP, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT VI:

PLAINTIFF v. DEFENDANT PVSEC

VIOLATION OF PLAINTIFF'S CONSTITUTIONAL
RIGHTS, SPECIFICALLY, 42 U.S.C.A § 1983 AND THE
FOURTH AMENDMENT
OF THE UNITED STATES CONSTITUTION

RESPONDEAT SUPERIOR

110.     Plaintiff incorporates by reference Paragraphs 1 through 109 as though fully set forth at length herein.

111.     Defendant PVSEC has a duty to oversee the activities of its employees and representatives and is responsible for the actions of employees and representatives during the scope of their employment.

112.     The unlawful and tortious actions of Defendant Gardner, as more fully described hereinbefore above, were completed during the scope of their employment and/or representation of Defendant PVSEC.

113.     As a direct and proximate result of the acts described hereinbefore above perpetrated by Defendant Gardner, as representatives of Defendant PVSEC, Plaintiff suffered the following injuries and damages:

   a.     Plaintiff's rights under the Fourth Amendment to the United States constitution were violated;

   b.     fright, horror, and shock;

   c.      emotional trauma and suffering;

   d.     damage to Plaintiff's reputation;

   e.     economic damages in the form of lost wages and pension; and

   f.     economic damages related to any other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against Defendant PVSEC, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT VII:

PLAINTIFF v. ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S<br>PENNSYLVANIA COMMON LAW RIGHTS

FALSE IMPRISONMENT

114.    Plaintiff incorporates by reference Paragraphs 1 through 113 as though fully set forth at length herein.

115.    Plaintiff claims damages for the injuries set forth herein under Pennsylvania Common Law against the Defendants for violations of Plaintiff's rights under color of law.

116.    The unreasonable seizure of the Plaintiff's person by Defendant Luffey and his subsequent detainment constituted an unreasonable deprivation of the Plaintiff's liberty in violation of common law of the Commonwealth of Pennsylvania, and at all times was done without probable cause to believe the Plaintiff had committed an act which would justify his detainment.

117.    Plaintiff believes, and therefore avers, Defendant Luffey and Defendant Montmeny, Defendant Burke and/or Doe(s), in their capacity as employees and/or representatives of Defendant HARP, and Defendant Gardner, in her capacity as a veterinarian for Defendant

PVSEC, conspired against the Plaintiff to unlawfully arrest, detain and prosecute the Plaintiff, without any probable cause.

118.    The actions of Defendants Montmeny, Burke and/or Doe(s), as more fully described herein, were done within the scope of their employment with and/or their capacity as representatives of Defendant HARP.

119.    The actions of the individual Defendants were willful, wanton and/or done with a reckless disregard for the rights of the Plaintiff thereby subjecting Defendants to punitive damages.

120.    As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendants, Plaintiff suffered the following injuries and damages:

      a.      violation of Plaintiff's rights under Pennsylvania Common Law;

      b.      fright, horror and shock;

      c.      emotional trauma and suffering; and

      d.      economic damages related to any and all other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against the Defendants, jointly and severally, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of them; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT VIII:

PLAINTIFF v. ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S
PENNSYLVANIA COMMON LAW RIGHTS

<u>DEFAMATION - SLANDER</u>

121.    Plaintiff incorporates by reference Paragraphs 1 through 120 as though fully set forth at length herein.

122.    As more fully described hereinbefore above, the individual Defendants conspired to make and intentionally made false and defamatory statements about the Plaintiff.

123.    The false and defamatory statements and claims by the individual Defendants, as more fully described hereinbefore above, negatively affected the Plaintiff's reputation, placed him in a false light to members of his community and caused the Plaintiff extreme emotional distress.

124.    Defendants Montmeny, Burke and Doe(s) made false and defamatory statements about the Plaintiff in their capacity as representatives and/or employees of Defendant HARP.

125.    Defendants Gardner made false and defamatory statements about the Plaintiff in her capacity as a representative and employee of Defendant PVSEC.

126.    As a direct and proximate result of the actions of the individual Defendants, and each of them, as set forth above, the Plaintiff was injured and damaged as follows:

      a.    Plaintiff suffered a violation of his Pennsylvania Common Law rights;

      b.    fright, horror, and shock;

      c.     emotional trauma and suffering;

      d.    damage to Plaintiff's reputation;

      e.    economic damages in the form of lost wages and pension; and

f.    economic damages related to any other consequential costs.

WHEREFORE, for all the above reasons, Plaintiff demands compensatory general damages against the Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit, reasonable attorney's fees as permitted by law, pre- and post-judgment interest as permitted by law; consequential damages; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT IX:

PLAINTIFF v. ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S
PENNSYLVANIA COMMON LAW RIGHTS

<u>DEFAMATION – SLANDER PER SE</u>

127.   Plaintiff incorporates by reference Paragraphs 1 through 126 as though fully set forth at length herein.

128.   As more fully described hereinbefore above, individual Defendants conspired to make and intentionally made false and defamatory statements about the Plaintiff.

129.   There is no evidence whatsoever that the Plaintiff engaged in any cruelty to any animal as averred by the individual Defendants.

130.   As more fully described hereinbefore above, the individual Defendants made false statements that the Plaintiff abused a dog while at Defendant HARP's facility.

131.   Defendants Gardner made false and defamatory statements about the Plaintiff in her capacity as a representative and employee of Defendant PVSEC.

132.    As a direct and proximate result of these false and defamatory statements made by the individual Defendants, Plaintiff was criminally charged, as more fully described above.

133.    The false and defamatory statements and claims by the individual Defendants, as more fully described hereinbefore above, negatively affected the Plaintiff's reputation, placed him in a false light to members of his community and caused the Plaintiff extreme emotional distress.

134.    Defendants Montmeny, Burke and Doe(s) made false and defamatory statements about the Plaintiff in their capacity as representatives and/or employees of Defendant HARP.

135.    As a direct and proximate result of the actions of the individual Defendants, and each of them, as set forth above, the Plaintiff was injured and damaged as follows:

      a.      Plaintiff suffered a violation of his Pennsylvania Common Law rights;

      b.      fright, horror, and shock;

      c.      emotional trauma and suffering;

      d.      damage to Plaintiff's reputation;

      e.      economic damages in the form of lost wages and pension; and

      f.      economic damages related to any other consequential costs.

WHEREFORE, for all the above reasons, Plaintiff demands compensatory general damages against the Defendants, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit, reasonable attorney's fees as permitted by law, pre- and post-judgment interest as permitted by law; consequential damages; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT X:

PLAINTIFF v. ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S
PENNSYLVANIA COMMON LAW RIGHTS

INTENTIONAL INTERFERENCE WITH A
BUSINESS RELATIONSHIP

136.    Plaintiff incorporates by reference Paragraphs 1 through 135 as though fully set forth at

length herein.

137.    As more fully described hereinbefore above, the individual Defendants conspired to

defame the Plaintiff and to interfere with his business relationship with the City of Pittsburgh as

animal care and control officer, in their capacity as representative and/or employees of

Defendants HARP and/or PVSEC.

138.    As a direct and proximate result of the actions of the individual Defendants, Plaintiff was

placed on leave and ultimately terminated from his position as animal care and control officer.

139.    As a direct and proximate result of the actions of the Defendants, as set forth above, the

Plaintiff was injured and damaged as follows:

        a.      Plaintiff suffered a violation of his Pennsylvania Common Law rights;

        b.      fright, horror, and shock;

        c.       emotional trauma and suffering;

        d.      damage to Plaintiff's reputation;

        e.      economic damages in the form of lost wages and pension; and

        f.      economic damages related to any other consequential costs.

        WHEREFORE, for all the above reasons, Plaintiff demands compensatory general

damages against the Defendants, and each of them, in the amount proven at trial; compensatory

special damages including, but not limited to, costs of suit, reasonable attorney's fees as permitted by law, pre- and post-judgment interest as permitted by law; consequential damages; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT XI:

PLAINTIFF v ALL DEFENDANTS

VIOLATION OF PLAINTIFF'S
PENNSYLVANIA COMMON LAW RIGHTS

<u>CONSPIRACY</u>

140.    Plaintiff incorporates by reference Paragraphs 1 through 139 as though fully set forth at length herein.

141.    The aforementioned actions of Defendants Luffey, Montmeny, Burke and Doe(s) constituted a conspiracy to arrest, detain and/or prosecute the Plaintiff, without probable cause, thereby violating the Plaintiff's rights under Pennsylvania Common Law.

142.    The aforementioned actions of Defendants Luffey, Montmeny, Burke and Doe(s) constituted a conspiracy defame the Plaintiff, affect the Plaintiff's business relationship as an animal care and control officer with the City of Pittsburgh and place him in a false light to members of his community.

143.    The actions of Defendants Montmeny, Burke and/or Doe(s), as more fully described herein, were done within the scope of their employment with and/or their capacity as representatives of Defendant HARP.

144.    The actions of the individual Defendants, and each of them, were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff, thereby subjecting these Defendants to punitive damages.

82.    As a direct and proximate result of the acts mentioned hereinbefore above, perpetrated by the Defendants, Plaintiff suffered the following injuries and damages:

      a.    Plaintiff's rights under Pennsylvania Common Law;

      b.    fright, horror, and shock;

      c.    emotional trauma and suffering;

      d.    damage to Plaintiff's reputation;

      e.    economic damages in the form of lost wages and pension; and

      f.    economic damages related to any other consequential costs.

WHEREFORE, Plaintiff demands compensatory general damages against Defendants, and each of them, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit; reasonable attorney's fees as permitted by law; pre- and post-judgment interest as permitted by law; punitive damages against the individual Defendants, and each of them, and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT XII:

PLAINTIFF v. DEFENDANT HARP

VIOLATION OF PLAINTIFF'S RIGHTS
UNDER PENNSYLVANIA COMMON LAW

<u>RESPONDEAT SUPERIOR</u>

145.    Plaintiff incorporates by reference Paragraphs 1 through 144 as though fully set forth at

length herein.

146.    Defendant HARP has a duty to oversee the activities of its employees and representatives

and is responsible for the actions of employees and representatives during the scope of their

employment.

147.    The unlawful and tortious actions of Defendants Montmeny, Burke and Doe(s), as more

fully described hereinbefore above, were completed during the scope of their employment and/or

representation of Defendant HARP.

148.    As a direct and proximate result of the acts described hereinbefore above perpetrated by

individual Defendants, as representatives of Defendant HARP, Plaintiff suffered the following

injuries and damages:

    a.    Plaintiff suffered a violation of his Pennsylvania Common Law rights;

    b.    Plaintiff's reputation has been damaged;

    c.    Plaintiff suffered economic damages related to any and all consequential costs;

    d.    Plaintiff has suffered other injuries and incurred damages which may become
          apparent throughout this litigation.

    WHEREFORE, for all the above reasons, Plaintiff demands compensatory general

damages against the Defendant HARP, in the amount proven at trial; compensatory special

damages including, but not limited to, costs of suit, reasonable attorney's fees as permitted by

30

law, pre- and post-judgment interest as permitted by law; consequential damages; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

COUNT XIII:

PLAINTIFF v. DEFENDANT PVSEC

VIOLATION OF PLAINTIFF'S RIGHTS<br>UNDER PENNSYLVANIA COMMON LAW

RESPONDEAT SUPERIOR

149.    Plaintiff incorporates by reference Paragraphs 1 through 148 as though fully set forth at length herein.

150.    Defendant HARP has a duty to oversee the activities of its employees and representatives and is responsible for the actions of employees and representatives during the scope of their employment.

151.    The unlawful and tortious actions of Defendant Gardner, as more fully described hereinbefore above, were completed during the scope of her employment and/or representation of Defendant PVSEC.

152.    As a direct and proximate result of the acts described hereinbefore above perpetrated by Defendant Gardner, as representatives of Defendant PVSCE, Plaintiff suffered the following injuries and damages:

    a.    Plaintiff suffered a violation of his Pennsylvania Common Law rights;

    b.    Plaintiff's reputation has been damaged;

    c.    Plaintiff suffered economic damages related to any and all consequential costs;

    d.    Plaintiff has suffered other injuries and incurred damages which may become apparent throughout this litigation.

WHEREFORE, for all the above reasons, Plaintiff demands compensatory general damages against the Defendant PVSEC, in the amount proven at trial; compensatory special damages including, but not limited to, costs of suit, reasonable attorney's fees as permitted by law, pre- and post-judgment interest as permitted by law; consequential damages; and such other relief, including injunctive and/or declaratory relief, as this Court may deem proper.

JURY TRIAL DEMANDED

Respectfully submitted,

LAW OFFICES OF JOEL SANSONE

s/ Joel S. Sansone
Joel S. Sansone, Esquire
PA ID No. 41008
Massimo A. Terzigni, Esquire
PA ID No. 317165
Elizabeth A. Tuttle, Esquire
PA ID No. 322888
*Counsel for Plaintiff*

Law Offices of Joel Sansone
Two Gateway Center, Suite 1290
603 Stanwix Street
Pittsburgh, Pennsylvania 15222
412.281.9194

Dated: October 25, 2021